**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ADRIAN PAYTON, TOI SMITH, and YOLANDA PERKINS, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,** | **CIVIL ACTION NO.:** |
| | **SECTION:** |
| **Plaintiffs,** | |
| | **JUDGE:** |
| **v.** | |
| **DK CROWN HOLDINGS, INC. D/B/A DRAFTKINGS, INC., FLUTTER ENTERTAINMENT PLC, FANDUEL, INC., BELLE OF ORLEANS, LLC D/B/A AMELIA BELLE CASINO, and CATFISH QUEEN, LLC D/B/A BALLY'S BATON ROUGE,** | **MAG. JUDGE:** |
| **Defendants.** | |

**JOINT NOTICE OF REMOVAL OF CLASS ACTION**

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants DK Crown Holdings Inc. d/b/a DraftKings Inc.; Flutter Entertainment plc[1]; FanDuel, Inc.; Belle of Orleans, LLC d/b/a Amelia Belle Casino; and Catfish Queen, LLC d/b/a Bally's Baton Rouge (collectively, "Defendants") hereby give timely notice of the removal of this action from the Civil District Court for the Parish of Orleans, State of Louisiana (Case No. 2026-09867) to this Court.[2]

The Court has original subject matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are completely diverse and the amount in controversy exceeds $75,000, exclusive of

---

[1] By filing this notice of removal, Flutter Entertainment does not concede that it is subject to the personal jurisdiction of the Court.

[2] By filing this notice of removal, FanDuel and associated Defendants do not waive their right to file a motion to compel arbitration pursuant to FanDuel's Terms & Conditions.

interest and costs. In addition, the Court has jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. §§ 1332(d), 1453, because there is minimal diversity, the amount in controversy exceeds $5,000,000, and the class size is at least 100 members.

In support thereof, Defendants state as follows:

## I. BACKGROUND AND PROCEDURAL HISTORY

1. On October 22, 2026, Plaintiffs Adrian Payton, Toi Smith, and Yolanda Perkins (collectively, "Plaintiffs") filed a "Class Action Petition" ("Petition") in the Civil District Court for the Parish of Orleans, State of Louisiana, against Defendants. The court designated the action as Case No. 2026-09867.

2. In their Petition, Plaintiffs allege that the DraftKings- and FanDuel-branded mobile sports gaming applications employ targeted promotions, user-data tracking, and other allegedly addictive features that encourage compulsive gaming and cause financial and psychological harm. Pet. ¶¶ 9–24, 63–76, 99–104, 131–34.

3. On the basis of those allegations, Plaintiffs assert claims sounding in products liability, redhibition, contract, misrepresentation, statutory duty liability, and unjust enrichment on behalf of themselves and a proposed Louisiana Master Class and two subclasses. *Id.* ¶¶ 61–123.

4. Although the Petition omits a total monetary demand, Plaintiffs seek recovery for: all financial losses allegedly incurred on the DraftKings and FanDuel apps (*id.* ¶ 132); consequential economic damages for "debts incurred to fund" Defendants' platforms (*id.* ¶ 134); compensatory damages for "[s]evere [m]ental [a]nguish and [e]motional [d]istress" (*id.*); medical treatment expenses for alleged gambling disorders (*id.*); and loss of consortium for alleged "strain and disruption to familial and domestic relationships" (*id.*).

5. The Petition specifically alleges that Plaintiff Payton has confirmed gambling losses of approximately $25,728.10. *Id.*¶ 40. This amount is exclusive of his alleged (1) consequential economic damages; and (2) non-economic damages. *Id.* ¶¶ 132, 134.

## II. PARTIES

6. Plaintiffs are natural persons domiciled in Orleans Parish, Louisiana. Pet. ¶¶ 36, 42, 48.

7. Defendant DK Crown Holdings Inc. ("DK Crown Holdings") is a Delaware corporation with its principal place of business in Boston, Massachusetts. DraftKings Inc. ("DraftKings") is a Nevada corporation with its principal place of business in Boston, Massachusetts. The Petition likewise alleges that "DraftKings" is a Nevada corporation with its principal place of business in Boston, Massachusetts. *Id.* ¶ 55.[3]

8. Defendant FanDuel, Inc. ("FanDuel") is a Delaware corporation with its principal place of business in New York. *Id.* ¶ 52.

9. Defendant Flutter Entertainment plc ("Flutter Entertainment") is an Irish public limited company with its principal place of business in New York. *Id.* ¶ 53.

10. Defendant Belle of Orleans, LLC d/b/a Amelia Belle Casino ("Belle of Orleans") is a limited liability company whose sole member is Peninsula Gaming, LLC. Peninsula Gaming, LLC is a limited liability company whose sole member is Boyd Acquisition II, LLC. Boyd Acquisition II, LLC is a limited liability company whose sole member is Boyd Acquisition I, LLC. Boyd Acquisition I, LLC is a limited liability company whose sole member is Boyd Acquisition, LLC. Boyd Acquisition, LLC is a limited liability company whose sole member is Boyd Gaming

[3] The Petition identifies "DraftKings" as "DK Crown Holdings, Inc. d/b/a DraftKings, Inc." Pet. ¶ 55.

Corporation. Boyd Gaming Corporation is a Nevada corporation with its principal place of business in Nevada.

11. Defendant Catfish Queen, LLC d/b/a Bally's Baton Rouge ("Catfish Queen") is a limited liability company whose sole member is The Queen Casino & Entertainment, LLC. The Queen Casino & Entertainment, LLC's sole member is Bally's Corporation, a Delaware corporation with its principal place of business in Rhode Island.

## III. TIMELINESS OF REMOVAL

12. Defendants FanDuel and Belle of Orleans were served with the Petition on November 3, 2026. Defendants DraftKings and Catfish Queen were served on November 4, 2026.

13. No Defendant has filed a responsive pleading in the state court action.

14. In accordance with 28 U.S.C. § 1446(b), this Notice of Removal is timely filed within 30 days of service of Plaintiffs' Petition on FanDuel, Belle of Orleans, DraftKings, and Catfish Queen. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354–56 (1999) (formal service is required to begin the 30-day removal period); *see also* 28 U.S.C. § 1446(b)(2)(B)–(C) (removal is timely if noticed within 30 days of service of last-served Defendant).

## IV. THIS COURT IS THE PROPER VENUE

15. This Court is a proper venue for removal of this action under 28 U.S.C. § 1441(a). The United States District Court for the Eastern District of Louisiana encompasses Orleans Parish, where the state court action was originally filed. *See* 28 U.S.C. § 98(a). Defendants reserve all rights to challenge this Court's personal jurisdiction based on the allegations in the Petition.

## V. THIS COURT HAS DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332(a)

16. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a) because (1) complete diversity of citizenship exists between Plaintiffs and Defendants, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 812 (5th Cir. 2021) (explaining that traditional diversity jurisdiction requires complete diversity).

### A. There is complete diversity of citizenship between Plaintiffs and Defendants.

17. For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

18. For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of each of its members. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195–96 (1990); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).

19. According to the Petition, Plaintiffs are domiciled in Orleans Parish, Louisiana. Pet. ¶¶ 36, 42, 48. Plaintiffs therefore are citizens of Louisiana for purposes of 28 U.S.C. § 1332.

20. DraftKings is a Nevada corporation with its principal place of business in Boston, Massachusetts. It therefore is a citizen of Nevada and Massachusetts for purposes of 28 U.S.C. § 1332(a).

21. DK Crown Holdings is incorporated in Delaware and has its principal place of business in Boston, Massachusetts. It therefore is a citizen of Delaware and Massachusetts for purposes of 28 U.S.C. § 1332(a).

22. FanDuel is a Delaware corporation with its principal place of business in New York. Pet. ¶ 52. It therefore is a citizen of Delaware and New York for purposes of 28 U.S.C. § 1332(a).

23. Flutter Entertainment is an Irish public limited company with its principal place of business in New York. Pet. ¶ 53. It therefore is a foreign company and citizen of New York for purposes of 28 U.S.C. § 1332(a).

24. Belle of Orleans is a limited liability company whose sole member is Peninsula Gaming, LLC. Peninsula Gaming, LLC is a limited liability company whose sole member is Boyd Acquisition II, LLC. Boyd Acquisition II, LLC is a limited liability company whose sole member is Boyd Acquisition I, LLC. Boyd Acquisition I, LLC is a limited liability company whose sole member is Boyd Acquisition, LLC. Boyd Acquisition, LLC is a limited liability company whose sole member is Boyd Gaming Corporation. Boyd Gaming Corporation is a Nevada corporation with its principal place of business in Nevada. Accordingly, Belle of Orleans is a citizen of Nevada for purposes of 28 U.S.C. § 1332.

25. Catfish Queen is a limited liability company whose sole member is The Queen Casino & Entertainment, LLC. The Queen Casino & Entertainment, LLC's sole member is Bally's Corporation, a Delaware corporation with its principal place of business in Rhode Island. Accordingly, Catfish Queen is a citizen of Delaware and Rhode Island for purposes of 28 U.S.C. § 1332.

26. Under the citizenship rules governing traditional diversity jurisdiction, no Defendant is a citizen of the same State as Plaintiffs. Thus, complete diversity exists between Plaintiffs and Defendants.

**B. The amount in controversy exceeds $75,000, exclusive of interest and costs.**

27. Where, as here, the Petition does not specify a total monetary demand, Defendants may assert the amount in controversy in their notice of removal. 28 U.S.C. § 1446(c)(2)(A). A "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). Because Louisiana law generally prohibits plaintiffs from specifying the amount of damages sought, a removing defendant may establish the amount in controversy by showing that "it is apparent from the face of the petition that the claims are likely to exceed $75,000." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002); *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882–83 (5th Cir. 2000). If contested, removal is proper if the Court finds, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. 28 U.S.C. § 1446(c)(2)(B).

28. Here, the Petition places more than $75,000 in controversy.

29. Although the Petition does not specify a total monetary demand, Plaintiffs seek recovery of substantial economic and noneconomic damages. Pet. ¶¶ 131–34. The Petition alleges that Plaintiff Payton placed bets totaling $88,716.27 on FanDuel and incurred confirmed gaming losses of $25,728.10. *Id.* ¶ 40. Payton further alleges that he took out a bank loan to pay his gaming debts and that his gaming adversely affected his personal relationships. *Id.* ¶¶ 39–40. Plaintiff Smith alleges that she deposited $22,018.50 and placed bets totaling $23,561.04 on FanDuel over a two-year period, and that she also used DraftKings. *Id.* ¶¶ 45, 47. Plaintiff Perkins alleges that she placed approximately $32,000 in bets on FanDuel and $37,000 on DraftKings. *Id.* ¶ 49.

30. Plaintiffs' Petition seeks damages beyond their identified gaming losses. Specifically, Plaintiffs seek consequential economic damages, including alleged bank overdraft

fees, high-interest credit card cash-advance fees, penalties associated with the depletion of retirement or savings accounts, and interest on debts incurred to fund their gaming. *Id.* ¶ 134(c). Plaintiffs also seek rescission and restitution of net deposits, calculated as deposits minus withdrawals, and disgorgement of transaction costs, including commissions, fees, and the alleged house hold or "vig." Pet. ¶ 134(a)–(b).

31. Plaintiffs also demand damages for alleged severe emotional distress, mental anguish, psychological trauma, loss of consortium, and disruption of family relationships. *Id.* ¶¶ 132(b), (d), 134(d). In addition, they seek past, present, and future medical treatment expenses, including psychiatric care and cognitive behavioral therapy, as well as attorney's fees under Louisiana Civil Code article 2545. *Id.* ¶¶ 132(c), 134(e). Recoverable statutory attorney's fees may also contribute to the amount in controversy. *See Manguno*, 276 F.3d at 723 ("If a state statute provides for attorney's fees, such fees are included as part of the amount in controversy.").

32. Under 28 U.S.C. § 1332(a), only one named plaintiff in a putative class action needs to have a claim with an amount in controversy exceeding $75,000 in order to support traditional diversity subject matter jurisdiction. *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 558–59 (2005).

33. Given the nature of the injuries alleged and the categories of damages sought, the amount in controversy plausibly exceeds $75,000. Specifically, Payton alleges $25,728.10 in gaming losses, meaning that his additional economic and noneconomic damages, together with potentially recoverable attorney's fees, need only exceed $49,271.90 to satisfy the jurisdictional threshold.

34. Accordingly, Payton's individual claim, including his alleged gaming losses, additional debt-related expenses, noneconomic damages, requested medical expenses, and

potentially recoverable attorney's fees, plausibly places more than $75,000 in controversy, exclusive of interest and costs. Pet. ¶¶ 39–40, 131–34; *Dart Cherokee*, 574 U.S. at 89. It is similarly plausible that the claims of Plaintiffs Smith and Perkins each have an amount in controversy exceeding $75,000 given their allegations of the total wagers they placed on Defendants' apps and other categories of requested damages, as noted above. *See supra* ¶¶ 30–31.

## VI. THIS COURT HAS JURISDICTION UNDER CAFA, 28 U.S.C. § 1332(d)

35. CAFA gives federal district courts original jurisdiction over any "class action"[4] that meets three requirements: (1) at least one proposed class member is a citizen of a state different from at least one defendant (the minimal diversity requirement); (2) the aggregate number of members of all proposed plaintiff classes is at least 100 (the numerosity requirement); and (3) the amount in controversy exceeds $5 million in the aggregate, exclusive of interest and costs (the amount-in-controversy requirement). *See* 28 U.S.C. § 1332(d)(2), (5)(B), (6); *Madison v. ADT, L.L.C.*, 11 F.4th 325, 327 (5th Cir. 2021) (quoting *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 438 (2019)).

36. A qualifying state court class action may be removed to federal court under 28 U.S.C. § 1453(b). As explained below, the Petition's allegations support each of these requirements for CAFA jurisdiction.

### A. This is a covered class action with at least 100 proposed members and minimal diversity.

37. Plaintiffs filed a "Class Action Petition" under Louisiana Code of Civil Procedure article 591, requesting certification of a Master Class and two subclasses. Pet. at 1; ¶¶ 57, 118–30.

[4] A "class action" is "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

The Petition therefore qualifies as a putative class action under CAFA's definition. 28 U.S.C. § 1332(d)(1)(B).

38. Plaintiffs allege that DraftKings and FanDuel maintain "hundreds of thousands of active mobile" gaming accounts in Louisiana, and that joinder of the proposed members is impracticable. Pet. ¶ 125. These allegations plausibly support an inference that the proposed class includes at least 100 members. 28 U.S.C. § 1332(d)(5)(B).

39. Minimal diversity is also present. The named Plaintiffs are Louisiana citizens, Pet. ¶¶ 36, 42, 48, while FanDuel is a Delaware corporation with its principal place of business in New York. *Id.* ¶ 52. Because CAFA does not require complete diversity, the minimal diversity requirement is satisfied regardless of the citizenship of the remaining Defendants. 28 U.S.C. § 1332(d)(2)(A); *Madison*, 11 F.4th at 327.

**B. The aggregate amount in controversy exceeds $5 million.**

40. The claims of putative class members are aggregated for CAFA's amount-in-controversy requirement. 28 U.S.C. § 1332(d)(6). A notice of removal needs only a plausible allegation that the amount exceeds the threshold; if contested by Plaintiffs or questioned by the Court, Defendants must establish the amount in controversy by a preponderance of the evidence. *See* 28 U.S.C. § 1446(c)(2)(B); *Dart Cherokee*, 574 U.S. at 88–89; *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 240 (5th Cir. 2015). A court may "make common-sense inferences about the amount put at stake by the injuries the plaintiffs claim." *Thompson v. La. Reg'l Landfill Co.*, 365 F. Supp. 3d 725, 730 (E.D. La. 2019) (quoting *Robertson*, 814 F.3d at 240).

41. The Petition alleges that the entities it calls the "Sportsbook Defendants" and "Casino Anchor Defendants" have accumulated "hundreds of millions of dollars in net consumer losses, transaction fees, and house holds" from Louisiana users. Pet. ¶ 113. Plaintiffs seek

disgorgement and restitution of "all funds, net deposits, and illicit profits retained by the Defendants, to the extent of the enrichment." *Id.* ¶ 117. Plaintiffs further allege that the DraftKings- and FanDuel-branded sportsbooks maintain hundreds of thousands of active mobile gaming accounts in Louisiana. *Id.* ¶ 125. The proposed Master Class encompasses Louisiana domiciliaries who created accounts, deposited funds, and used either or both mobile gaming applications during the proposed class period. *Id.* ¶¶ 119–22. Given the amounts Plaintiffs allege were retained from Louisiana users and the restitution they seek, the aggregate amount in controversy plausibly exceeds $5 million.

42. Plaintiffs also demand financial losses, emotional distress damages, medical treatment expenses, loss of consortium, consequential damages, and potentially recoverable statutory attorney's fees. Pet. ¶¶ 131–34. These additional categories of relief further support the amount in controversy.

43. Accordingly, the amount in controversy plausibly exceeds $5 million, exclusive of interest and costs. The statutory prerequisites for CAFA jurisdiction are met.

**C. The local controversy, home state, and discretionary exceptions to CAFA do not apply.**

44. Plaintiffs anticipated CAFA removal by alleging that this Court would be required to decline jurisdiction under the local controversy exception. Pet. ¶ 59. Specifically, Plaintiffs allege that: (1) more than two-thirds of the proposed class members are Louisiana citizens; (2) at least one Louisiana defendant is a significant basis for the claims and significant relief is sought from it; (3) the principal injuries occurred in Louisiana; and (4) no similar Louisiana class action was filed within the preceding three years. *Id.* ¶ 59(a)–(d). But Plaintiffs cannot establish the statutory requirements for the exception. Plaintiffs bear the burden of demonstrating that an exception to CAFA jurisdiction applies. *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571

(5th Cir. 2011) ("the party objecting to CAFA jurisdiction must prove" that an exception applies); *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 367 (E.D. La. 2007). Courts have noted that the local controversy exception is "intended to be narrow, 'with all doubts resolved in favor of exercising jurisdiction over the case.'" *Opelousas Gen. Hosp. Auth. v. FairPay Sols., Inc.*, 655 F.3d 358, 360 (5th Cir. 2011) (quoting *Evans v. Walter Indus. Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006); *Westerfeld v. Independent Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010)). The local controversy exception does not apply for multiple reasons.

45. *First*, the local controversy exception requires that "no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons" during the preceding three years. 28 U.S.C. § 1332(d)(4)(A)(ii). Plaintiffs allege only that no similar *Louisiana* class action was filed during that period. Pet. ¶ 59(d). But the statute contains no geographic limitation. Prior class actions filed in other states may defeat the exception. *See Blum v. AT&T Corp.*, No. 6:23-CV-01748, 2025 WL 2792249, at *11–12 (W.D. La. Sept. 12, 2025), report and recommendation adopted, 2025 WL 2814633 (W.D. La. Sept. 30, 2025); *Schutte v. Ciox Health, LLC*, 28 F.4th 850, 860 (7th Cir. 2022) (rejecting a geographic limitation where the earlier class action filed in a different state alleged the same "basis of wrongdoing").

46. Here, several putative class actions filed within the preceding three years assert substantially similar factual allegations. On April 27, 2026, nearly six months before this action was filed, two plaintiffs filed a proposed nationwide class action in the Southern District of New York against, among others, DraftKings, FanDuel, and Flutter Entertainment. *See Farley v. Betfair Interactive US LLC*, No. 1:26-cv-03464, Compl., ECF No. 1 (S.D.N.Y. Apr. 27, 2026). The *Farley* plaintiffs later filed an amended complaint on November 4, 2026. *See id.*, Am. Class Action

Compl., ECF No. 55 (S.D.N.Y. Nov. 4, 2026), Ex. A. Like Plaintiffs here, the *Farley* plaintiffs alleged that DraftKings and FanDuel designed their sportsbook apps to encourage continuous live and in-game play; eliminated friction between bets and deposits; used customer data and gaming histories to target users with personalized promotions; and encouraged compulsive gaming and loss-chasing, resulting in financial and personal harm. These allegations closely parallel the Petition's claims concerning addictive platform design, personalized promotions, data tracking, and resulting financial harm. *Compare* Pet. ¶¶ 9–24, 35, 63–76, 91, 95–96, 99–104, with *Farley*, Compl. ¶¶ 1–10, 40–45, 47–54, 57–73, 75–79, Ex. A. In addition, the nationwide class proposed in *Farley* (*see Farley*, Am. Class Action Compl. ¶ 121) would include the DraftKings and FanDuel customers residing in Louisiana who would be members of the state-wide class that Plaintiffs seek to certify in the instant action.

47. In January 2025, separate plaintiffs filed a proposed class action in Illinois state court alleging, among other things, that DraftKings' sportsbook app was defectively designed to encourage compulsive gaming through user data tracking, targeted promotions, and other inducements. The action was removed to the Northern District of Illinois in February 2025, and plaintiffs filed a First Amended Class Action Complaint in May 2025. *See Beyer v. DraftKings, Inc.*, No. 1:25-cv-01336, Class Action Compl., ECF No. 1-1; First Am. Class Action Compl., ECF No. 34 (N.D. Ill. May 9, 2025), Ex. B. The *Beyer* plaintiffs alleged that DraftKings designed its app to encourage rapid in-game play, exploit addictive feedback loops, target vulnerable users, and provide inadequate warnings about addiction risks. *Id.* ¶¶ 39–40, 240–43, 462. Those allegations substantially overlap with Plaintiffs' claims concerning addictive app design, personalized promotions, data tracking, and resulting financial harm. *Compare* Pet. ¶¶ 9–24, 63–76, 87–104, *with Beyer*, First Am. Class Action Compl. ¶¶ 39–40, 240–43, 462, Ex. B.

48. Other previously filed class actions similarly challenge DraftKings' sportsbook design and promotional practices. *See Youngs v. DraftKings, Inc.*, No. 2:25-cv-00179, Second Am. Class Action Compl., ECF No. 49 ¶¶ 151, 158, 179 (D.N.J. Aug. 13, 2025) (alleging risks associated with mobile gaming applications and inadequately disclosed promotional terms); *Macek v. DraftKings, Inc.*, No. 2:25-cv-03632, Am. Class Action Compl., ECF No. 55 ¶¶ 57, 59, 62–66, 71 (E.D. Pa. May 13, 2026) (alleging that DraftKings targets vulnerable and losing users with promotions designed to encourage increased gaming and retain customers); *Koester v. DraftKings Inc.*, No. 2:25-cv-14188, Am. Class Action Compl., ECF No. 20 at 1–2, 5–8 (E.D. Mich. Mar. 16, 2026) (alleging that DraftKings allowed users to increase self-imposed gaming limits without required waiting periods), Exs. C–E.

49. The earlier class action need not involve identical plaintiffs, classes, legal theories, or forum states; substantially similar factual allegations against a common defendant suffice. *Schutte*, 28 F.4th at 859–61; *Caruso*, 469 F. Supp. 2d at 370–71. Here, *Farley* independently satisfies the prior-class-action requirement because it names Defendants in this action—DraftKings, FanDuel, and Flutter Entertainment—and asserts substantially similar allegations concerning addictive sportsbook design, targeted promotions, repeated gaming opportunities, and resulting financial harm. The other previously filed actions further demonstrate the substantial factual overlap between Plaintiffs' allegations and litigation challenging mobile sportsbook design and promotional practices. Because a similar class action was filed against Defendants within the preceding three years, Plaintiffs cannot invoke the local controversy exception. *Caruso*, 469 F. Supp. 2d at 371.

50. *Second*, the local controversy exception requires at least one Louisiana defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for

the claims." 28 U.S.C. § 1332(d)(4)(A)(i)(II). This requires Plaintiffs to show that a local Louisiana defendant's conduct is significant compared to the other defendants' conduct. *See Opelousas General Hospital Authority v. FairPay Solutions*, 655 F.3d 358, 361–63 (5th Cir. 2011). Here, the Petition focuses on the design and promotion conduct of DraftKings and FanDuel. The local casinos, Belle of Orleans and Catfish Queen, are named only as local licensees whose licenses allow the apps to operate in Louisiana, based on allegations that they failed to supervise the apps and shared in the revenue. Pet. ¶¶ 54, 56, 59(b), 65, 84, 108. But that type of derivative conduct is insufficient. *Ictech-Bendeck v. Progressive Waste Sols. of LA, Inc.*, 367 F. Supp. 3d 555, 568 (E.D. La. 2019) ("[T]he state court petition in this case states merely that the Landfill was owned by Defendant Jefferson Parish and operated pursuant to contracts issued by Jefferson Parish, but does not sufficiently differentiate between its conduct and the conduct of the other Defendants.").

51. Plaintiffs in this action also cannot establish the required elements for application of the local controversy exception under 28 U.S.C. § 1332(d)(4)(A) because the conduct of defendants in Louisiana does not "form[] a significant basis for the claims asserted" and because "principal injuries resulting from the alleged conduct," if proven, would have been suffered nationwide and not just in Louisiana. *See, e.g., Louisiana ex rel. Div. of Admin. v. i3 Verticals Inc.*, 81 F.4th 483, 490 (5th Cir. 2023); *Faulk v. JELD-WEN, Inc.*, 650 F. Supp. 3d 803, 812–13 (D. Alaska 2023); *Marino v. Countrywide Fin. Corp.*, 26 F. Supp. 3d 949, 955 (C.D. Cal. 2014).

52. The home state exception likewise provides no basis for declining jurisdiction. That exception requires that at least two-thirds of the proposed class members and all primary defendants be citizens of the forum state. 28 U.S.C. § 1332(d)(4)(B). Although Plaintiffs limit their proposed classes to Louisiana domiciliaries, DraftKings and FanDuel are primary defendants because the Petition centers on their applications' allegedly addictive design and promotional

practices. Neither is a Louisiana citizen. Pet. ¶¶ 9–24, 63–76, 87–104; *Robert J. Caluda, APLC v. City of New Orleans*, 403 F. Supp. 3d 522, 540–41 (E.D. La. 2019) ("the home state exception applies if all of the primary defendants are citizens" of the forum state) (quoting *Watson v. City of Allen, Tx.*, 821 F.3d 634, 641 (5th Cir. 2016)); *Madison*, 11 F.4th at 328–29. Accordingly, the home state exception does not apply.

53. Nor does CAFA's discretionary exception provide a basis for declining jurisdiction. That exception applies only when more than one-third but less than two-thirds of the proposed class members, and the primary defendants, are citizens of the forum state. 28 U.S.C. § 1332(d)(3). Neither condition is satisfied here. Plaintiffs define their proposed classes to include only Louisiana domiciliaries, and the primary defendants, DraftKings and FanDuel, are not Louisiana citizens. Pet. ¶¶ 119–22. The discretionary exception therefore does not apply.

54. Accordingly, none of CAFA's exceptions defeats federal jurisdiction. This Court has original jurisdiction under 28 U.S.C. § 1332(d), and removal is proper pursuant to 28 U.S.C. § 1453(b).

55. All Defendants consent to this Notice of Removal.

56. Pursuant to 28 U.S.C. § 1446(a), a complete copy of all process, pleadings, and orders served upon Defendants in the state court action is attached hereto as Exhibit F.

57. Pursuant to 28 U.S.C. § 1446(d), prompt written notice of the filing of this Notice of Removal is being provided to Plaintiffs and filed with the Clerk of the Civil District Court for the Parish of Orleans, Louisiana. Copies of the State Court Notice to Clerk is attached hereto as Exhibit G.

58. Defendants reserve all rights and defenses, including, without limitation, the right to amend or supplement this Notice of Removal. By removing this action, Defendants do not

waive, and expressly preserve, all defenses, objections, and rights available to them, including defenses relating to personal jurisdiction, service, process, venue, and failure to state a claim.

59. Defendants will timely answer, move, or seek an extension of time for responding to the Petition within the time prescribed by Federal Rule of Civil Procedure 81(c) or Local Rule 7.8.

60. If any question arises with regard to the removal of this action, Defendants respectfully request the opportunity to be heard on that issue.

Respectfully submitted,

**GORDON, ARATA, MONTGOMERY, BARNETT, MCCOLLAM, DUPLANTIS & EAGAN, LLC**

*/s/ Martin E. Landrieu*

Martin E. Landrieu (La. Bar No. 18995)
mlandrieu@gordonarata.com
Phillip J. Antis, Jr. (La. Bar No. 29067)
pantis@gordonarata.com
Elizabeth A. McGovern (La. Bar No. 41342)
emcgovern@gordonarata.com
201 St. Charles Avenue, 40th Floor
New Orleans, LA 70170-4000
Phone: (504) 582-1111
Facsimile: (504) 582-1121

*Counsel for Defendants DK Crown Holdings Inc. d/b/a DraftKings Inc. and Catfish Queen, LLC d/b/a Bally's Baton Rouge*

**CHAFFE McCALL LLP**

*/s/ Brent A. Talbot*
Brent A. Talbot (La. Bar No. 19174)
Peter J. Rotolo (La. Bar No. 21848)
Jesse Frank (La. Bar No. 38220)
talbot@chaffe.com
rotolo@chaffe.com
jesse.frank@chaffe.com
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Phone: (504) 585-7059

*Counsel for Defendants Flutter Entertainment plc, FanDuel, Inc., and Belle of Orleans, LLC d/b/a Amelia Belle Casino*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing document was served on all counsel of record and parties hereto for whom counsel has not entered an appearance, by First-Class postage-prepaid U.S. Mail, and via e-mail, on this date, the 24th day of November 2026.

/s/ *Brent A. Talbot*